**Ty K. Wyman, OSB 925083**
Email: twyman@dunncarney.com
Dunn Carney Allen Higgins & Tongue LLP
851 SW Sixth Ave., Suite 1500
Portland, Oregon 97204-1357
Telephone:     503.224.6440
Facsimile:     503.224.7324

*Pro hac vice* motion to be filed for:

**Daniel P. Dalton (MI. P44056)**
Email: Ddalton@daltontomich.com
**Lawrence Opalewski (MI. P77864)**
Email: Lopalewski@daltontomich.com
Dalton & Tomich, PLC
The Chrysler House
719 Griswold Suite 270
Detroit, MI 48226
Tel. (313) 859-6000
Fax (313) 859-8888
Attorneys for Plaintiff Athey Creek Christian Fellowship

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ATHEY CREEK CHRISTIAN FELLOWSHIP,** | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| **CLACKAMAS COUNTY,** | **(Violation of the Religious Land Use and Institutionalized Persons Act Equal Terms Provision, 42 U.S.C. § 2000cc(b)(1); Violation of the Right to Free Exercise of Religion Guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. § 1983; Estoppel; Violation of Article I, sections 2 & 3 of the Oregon Constitution)** |
| Defendant. | |
| | **JURY TRIAL DEMANDED** |

Plaintiff, Athey Creek Christian Fellowship ("the Church"), by its undersigned counsel, files this complaint against Defendant Clackamas County ("the County") and alleges that:

## PARTIES & PROPERTY AT ISSUE

1.      The Church has been organized as an Oregon nonprofit corporation since 1996. **Exhibit A, Articles of Incorporation**.

2.      The Church is located at 2700 Southwest Ek Road, West Linn, Oregon 97068 ("the Property").

3.      The Property is in the jurisdiction of Defendant Clackamas County, which is under the jurisdiction of this Court.

## NATURE OF THE CASE

4.      In 2005, the Church was called by God to build a church campus at the Property.

5.      This campus was planned to host a church building, constructed in two phases, a maintenance center, and accompanying parking.

6.      The campus would be built in the furtherance of the Church's sincerely held religious belief to spread the gospel of Jesus Christ, to provide teaching to believers, and to provide a place of refuge and ministry to all who wish to come.

7.      The Property is located in the RRFF-5 zoning district.

8.      Under the County's Zoning and Development Ordinance ("ZDO"), a church located in the RRFF-5 district must obtain a conditional use permit before building and operating. **Exhibit B, Portion of the Clackamas County ZDO.**

COMPLAINT

9.     However, numerous nonreligious assemblies and institutions are permitted as of right in the RRFF-5 district and are not required to go through the CUP process. *Id.*

10.     Nevertheless, in 2006 the Church applied for and obtained a CUP. **Exhibit C, 2006 CUP**.

11.     Due to economic and financial circumstances during the mid-2000s, it became apparent that the Church would not be able to build its full campus all at one time.

12.     Specifically, one major reason for the Church's financial hardship was that the County forced the Church to pay millions of dollars for road and traffic improvements to an already-failing roadway.

13.     Anticipating the financial difficulties, the Church therefore reached out to County planning official Clay Glasgow ("Mr. Glasgow") and inquired whether the Church would be able to obtain permission for the entire development and build in phases without needing to obtain multiple CUPs. **Exhibit D, Email Exchange with Glasgow.**

14.     Mr. Glasgow, acting on behalf of the County, affirmed that the Church would be able to obtain the CUP for the total project scope and then build in phases. He advised the Church to take exactly this approach. *Id.*

15.     Based on this advice from County officials, the Church obtained a CUP for the entire project and then commenced construction on Phase 1 of its building plan.

16.     The Church is now ready to proceed with Phase 2 of its building plan.

17.     However, in direct contradiction to its prior communications, the County has refused to allow the Church to conduct Phase 2 without obtaining a new or modified CUP.

18.     The CUP process is lengthy, expensive, and carries a high degree of uncertainty since the application could be denied.

19.     The Church has therefore been left with no alternative but to initiate this action to protect its ability to worship and spread the gospel according to its sincerely held beliefs.

20.     This suit, which seeks damages as well as declaratory and injunctive relief, challenges the manner in which the County has implemented and imposed its land use regulations to restrict the Church's religious land use and its rights guaranteed by the Religious Land Use and Institutionalized Persons Act ("RLUIPA") 42 U.S.C. § 2000cc *et seq.*, the United States Constitution, and Oregon law.

## JURISDICTION, REQUEST FOR ADVANCEMENT ON THE COURT'S CALENDAR, AND VENUE

21.     This Court has original subject matter jurisdiction over this case under:

a.   42 U.S.C. § 2000cc-2(f) and 28 U.S.C. § 1331, as this action arises under the United States Constitution and laws of the United States;

b.   28 U.S.C. § 1343(a)(3), as this case is brought to redress deprivations under color of state law, of rights, privileges and immunities secured by the United States Constitution;

c.  28 U.S.C. § 1343(a)(4), as this case seeks to recover equitable relief under acts of

Congress, specifically 42 USC § 1983 and 42 U.S.C. § 2000cc, which provide causes

of actions for the protection of civil and constitutional rights and injunctive remedies;

d.  28 U.S.C. § 2201(a), as this case seeks declaratory relief under 28 U.S.C. § 2202;

e.  42 U.S.C. § 1988, to secure reasonable attorney fees as part of the case; and

f.  supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims

which are part of the same case or controversy.

22.  Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because the Defendant

is situated in this district and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events

or omissions giving rising to the claims occurred in this district.

23.  The Church also respectfully requests a speedy decision and advancement on this

Court's calendar under Fed. R. Civ. P. 57 and 28 U.S.C. § 2201.

## COMMON ALLEGATIONS

### *Athey Creek Christian Fellowship Background*

24.  The Church was founded in 1996 as a small group of Christian believers who

initially met in a middle school for Bible study.

25.  The Church's ministry was blessed with growth, and it soon became apparent that

a new building was needed to further the Church's mission. This was due in part to the County

refusing to allow the Church to continue meeting in the middle school.

26.  The Church moved to a building in Wilsonville, OR and continued its ministry.

27.  In or about 2005, the Church acquired the current Property.

28.  The Church is a non-denominational fellowship worshipping in the Christian

tradition.

29.     The Church's vision is for everything it does to point people to Jesus Christ.

30.     The Church strives to be a refuge, a hospital of sorts, where those who are lost, hurting, or worn out feel welcome.

31.     The Church's hope is that all who visit find healing and refreshment.

32.     The Church follows the Acts 2:42 model, "And they continued steadfastly in the apostles' doctrine and fellowship, and in breaking of bread, and in prayers."

33.     To this end, the Church operates many different ministries including men's, women's, young adults, high school, junior high, children, and missions.

34.     Due to a growing congregation, the Church has been forced to conduct many duplicate worship services to accommodate all who wish to come.

35.     Currently, the Church offers services on Saturday at 4 pm and 6 pm, Sunday at 8 am, 10 am, and 12 pm, as well as Wednesday at 7 pm. This is in addition to weddings, funerals, conferences, and other ministry events.

36.     The Church is unable to offer more services due to staff and logistical limitations as well as the desire to follow the biblical mandate of gathering as much of the congregation together as possible for worship and fellowship.

### *The Property and the Clackamas County ZDO*

37.     The Property is a roughly 29-acre parcel.

38.     Under the Clackamas County ZDO, the Property is zoned RRFF-5 (Rural Residential Farm Forest 5-acre).

39.     A place of worship is a conditional use in the RRFF-5 zoning district and must obtain a CUP. **Exhibit B, p. 5.**

40.    By contrast, a category of nonreligious assemblies and institutions, "Recreational Uses, Government-Owned," is permitted as of right in the RRFF-5 zoning district without the need for a CUP. *Id, p. 6.*

41.    Uses in the "Recreational Uses, Government-Owned" category include but are not limited to the following nonreligious assemblies and institutions:

   a.    Amphitheaters

   b.    Ball fields

   c.    Community buildings and grounds

   d.    Fitness and recreational facilities

   e.    Swimming pools

   f.    Parks

   g.    Tables and seating. *Id.*

42.    In other words, churches are required to go through the CUP process and obtain approval before locating in the RRFF-5 district while certain nonreligious assemblies and institutions are not required to go through the CUP process or obtain approval before locating in the RRFF-5 district.

### *The 2006 CUP Process*

43.    In early 2006, the Church was in the process of completing its CUP application for submission to the County.

44.    The Church desired to construct a total of 123,400 square feet of new floor area, including a 105,00-square foot main church building.

45.    The Church asked the County whether a phased building approach would be acceptable.

46.     To this end, Church Planner Lans Stout ("Mr. Stout"), emailed County Senior Planner Clay Glasgow on March 31, 2006. **Exhibit D.**

47.     Mr. Stout informed Mr. Glasgow of the Church's question and inquired whether there would be any problem with obtaining CUP approval for the entire project up front and then building in phases as funding dictated. *Id.*

48.     Mr. Glasgow responded and advised "getting the whole thing approved from the get-go." He also stated "phasing would be fine." Finally, he advised: "Worst case scenario with such a submittal is that the CU would be approved for the total development, but each phase would need to come in for specific Design Review."

49.     After receiving Mr. Glasgow's reassurances, the Church completed and submitted its application for a CUP on or about May 8, 2006. **Exhibit C.**

50.     On or about July 13, 2006, a public hearing was held regarding the Church's CUP application. *Id.*

51.     After the public hearing and review process was completed, the Church's CUP application was approved subject to a number of listed conditions. *Id.*

52.     The approved CUP allowed the Church to build 123,400 square feet of new floor space. *Id.***, p. 1.**

53.     The approved CUP also provided for 900 off-street parking spaces with associated circulation areas and landscaping. *Id.*

54.     Following approval of the CUP, the Church completed Phase 1 of its building plan, ultimately completing the current church building in 2015.

55.     The Church also satisfied each and every condition of the CUP.

56.     Notably, in August 2013, the Church reached out to County Planning Director Mike McCallister regarding a proposed modification to its building plan. **Exhibit E, Email Exchange with McCallister.**

57.     In the ensuing internal email exchanges, both County Senior Policy Analyst Diedre Landon and Development Review Coordinator Deana Mulder expressed the opinion that the Church's CUP was still active. **Id.**

58.     On October 1, 2013, County Planning Director Mike McCallister confirmed that "no new additional land use review" was required for the proposed development, thus confirming that the CUP was still active, and the Church had "established" its use. **Id.**

59.     Currently, the main church building is approximately 43,933 square feet in size.

60.     The Church is now proposing to commence Phase 2 of its building plan.

61.     Phase 2 of the building plan would expand the main church building to approximately 123,400 square feet, as approved in the initial CUP. **Exhibit C.**

62.     Seating in the sanctuary will be expanded to approximately 2,000 seats as authorized by the CUP. ***Id.***

63.     The Church also intends to add new onsite parking but will not increase off-street parking to more than 900 spaces as authorized by the CUP. ***Id.***

64.     When the Church notified the County of its intention to commence Phase 2, the County took the position that the Church was required to apply for a new or modified CUP.

65.     The CUP process is both expensive and subject to delays and possible denial.

66.     The Church, through counsel, sent a letter to the County detailing why the County's position deprived the Church of its rights under RLUIPA and the U.S. Constitution. **Exhibit F, Letter to County.**

67.    The County responded to the Church's letter on August 29, 2022. **Exhibit G, Letter from County.**

68.    In its response letter, the County maintained its position that the Church had somehow failed to maintain its CUP approval and was therefore required to apply for a new or modified CUP. **Id.**

69.    The Church is therefore prohibited from completing the construction for which it was approved under the 2006 CUP.

70.    As a result of this deprivation of its rights, the Church is unable to follow its religious mandate to welcome all who wish to come worship together as a church body.

71.    Faced with no alternative, the Church was forced to file this action to enforce its rights.

## FIRST CLAIM FOR RELIEF

### Violation of the Religious Land Use and Institutionalized Persons Act
### Equal Terms Provision (Facial Claim) 42 U.S.C. § 2000cc(b)(1)

72.    Plaintiff incorporates the allegations in the preceding paragraphs by reference.

73.    Congress defined "religious exercise" to broadly include:

*"any exercise of religion, whether or not compelled by, or central to, a system of religious belief," and specifies that the "use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose."* 42 U.S.C. 2000cc-5(7).

74.    Congress further directed that RLUIPA should be "construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution."  42 U.S.C. 2000cc-3(g).

75.    Under RLUIPA's Equal Terms provision, "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution."  42 U.S.C. § 2000cc(b)(1).

76.    In a facial claim, such as this, the court considers "only the text of the zoning ordinance, not its application." *Calvary Chapel Bible Fellowship v. County of Riverside*, 948 F.3d 1172, 1176 (9th Cir. 2020).

77.    To show an equal terms violation: "(1) there must be an imposition or implementation of a land-use regulation, (2) by a government, (3) on a religious assembly or institution," and (4) the imposition or implementation must be "on less than equal terms with a nonreligious assembly or institution." *New Harvest Christian Fellowship v. City of Salinas,* 29 F.4th 596, 604 (9th Cir. 2022).

78.    In this case, the Clackamas County ZDO is a land-use regulation that has been implemented and imposed on the Church and all other properties within Clackamas County.

79.    The ZDO has been implemented by Defendant Clackamas County, which is a government entity under the meaning of RLUIPA's Equal Terms provision.

80.    The Church is a religious assembly or institution under RLUIPA's Equal Terms provision.

81.    On its face, the ZDO implements its regulations on religious assemblies and institutions on less than equal terms than with nonreligious assemblies or institutions.

82.    Specifically, Section 316 of the ZDO regulates the RRFF-5 District, in which the Church's property is located. **Exhibit B.**

83.    Table 316-1 itemizes which land uses are permitted in the RRFF-5 District and on what basis. ***Id.***

84.    Under Table 316-1, a "Place of Worship" such as the Church is legal in the RRFF-5 District only after securing conditional land use approval under Section 1203. ***Id.*, p. 5.**

85.    Also under Table 316-1, a category of nonreligious assemblies and institutions, "Recreational Uses, Government-Owned," is permitted as of right in the RRFF-5 zoning district without the need for a CUP. ***Id.*, p. 6.**

86.    Uses in the "Recreational Uses, Government-Owned" category include but are not limited to the following nonreligious assemblies and institutions:

a.    Amphitheaters

b.    Ball fields

c.    Community buildings and grounds

d.    Fitness and recreational facilities

e.    Swimming pools

f.    Parks

g.    Tables and seating. ***Id.***

87.    Section 316 of the ZDO therefore treats religious assemblies and institutions on less than equal terms with nonreligious assemblies and institutions since religious assemblies and institutions must go through the CUP process while many nonreligious assemblies and institutions do not.

88.    Further, Table 316-1 states that a "Place of Worship" must also comply with Section 804 of the ZDO. ***Id.***

89.    Section 804 of the ZDO places additional restrictions on Places of Worship that are not imposed on nonreligious assemblies and institutions. **Exhibit B, p. 14.**

90.     For example, Section 804 imposes more restrictive setback and maximum lot coverage requirements on "Places of Worship" than are imposed on uses in the RRFF-5 District generally. *Id.*

91.     The restrictions in Section 804 are not applied to nonreligious assemblies and institutions.

92.     This is another instance of the ZDO treating religious assemblies and institutions on less than equal terms than nonreligious assemblies and institutions.

93.     "Places of Worship" are similarly situated to at least some "Recreational Uses, Government-Owned" with respect to accepted zoning criteria.

94.     The Church and "Places of Worship" are not more harmful to accepted zoning criteria than "Recreational Uses, Government-Owned."

95.     Further, the ZDO is not reasonably well-adapted to any zoning criterion the County may use to justify its unequal treatment of religious assemblies and institutions.

96.     Therefore, the County has violated RLUIPA's Equal Terms provision since the ZDO, on its face, treats religious assemblies and institutions on less than equal terms than nonreligious assemblies and institutions.

97.     As a direct result of the County's violations of 42 USC § 2000cc(b), as alleged above, the Church is suffering irreparable harm for which there is no adequate remedy at law.

98.     Furthermore, as a direct result of the County's violations of 42 USC § 2000cc(b), as alleged above, the Church is entitled to recover damages, costs, and attorney fees.

99.     The Church therefore respectfully requests the relief identified below.

## SECOND CLAIM FOR RELIEF

### Violation of the Religious Land Use and Institutionalized Persons Act
### Equal Terms Provision (As-Applied Claim) 42 U.S.C. § 2000cc(b)(1)

100.    Plaintiff incorporates the allegations in the preceding paragraphs by reference.

101.    As stated above, under RLUIPA's Equal Terms provision, "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution."  42 U.S.C. § 2000cc(b)(1).

102.    Defendant County is a government for purposes of RLUIPA's Equal Terms provision.

103.    Defendant County is implementing the ZDO, which is a land use regulation for purposes of RLUIPA's Equal Terms provision.

104.    The way the County has applied the ZDO to the Church is on a less than equal basis with nonreligious assemblies and institutions.

105.    For example, multiple nonreligious assemblies and institutions have been permitted to build in phases without needing to apply for a new or modified CUP.

106.    Upon information and belief, the Jacknife-Zion-Horse Heaven Historical Society, Willamette United Football Club, the Oregon City School District, and Head Start Clackamas County Children's Commission have all received better treatment in the implementing of the ZDO than the Church.

107.    The Church is not more harmful to any accepted zoning criteria than these nonreligious assemblies and institutions.

108.    Further, the County's unequal enforcement of the ZDO is not reasonably well-adapted to any zoning criterion the County may use to justify its unequal treatment of religious assemblies and institutions.

109.    Therefore, the County's application of its ZDO has violated RLUIPA's Equal Terms provision.

110.    As a direct result of the County's violations of 42 USC § 2000cc(b), as alleged above, the Church is suffering irreparable harm for which there is no adequate remedy at law.

111.    Furthermore, as a direct result of the County's violations of 42 USC § 2000cc(b), as alleged above, the Church is entitled to recover damages, costs, and attorney fees.

112.    The Church therefore respectfully requests the relief identified below.

### THIRD CLAIM FOR RELIEF

**Violation of the Religious Land Use and Institutionalized Persons Act
Substantial Burden Claim, 42 U.S.C. § 2000cc(b)(1)**

113.    Plaintiff incorporates the allegations in the previous paragraphs by reference.

114.    Congress provided in Section 2(a)(1) of RLUIPA statutory protections for "religious exercise" as follows:

*"No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution . . . is in furtherance of a compelling government interest [and] is the least restrictive means of furthering that compelling government interest." U.S.C. 2000cc(a)(1).*

115.    The County has made an "individualized assessment" of the Church's land use within the meaning of 42 U.S.C. § 2000cc(a)(2)(C).

116.    By forcing the Church to go through the lengthy and costly CUP process before proceeding with Phase 2 of its building plan, the County has placed a substantial burden on the Church's religious exercise.

117.    As explained above, the Church's sincere religious beliefs compel it to obey the biblical command to gather together for corporate worship and welcome all guests who wish to come so that the gospel can be spread, and needs can be met.

118.    The Church's current facilities are insufficient to accommodate the number of persons being led to the Church. This is despite the Church's efforts to accommodate the increased attendance with multiple service times.

119.    The County's prohibition of the Church's Phase 2 building will force the Church to violate its sincere religious beliefs as described herein.

120.    The burden placed on the Church by the County is significantly great and is much more than a simple inconvenience.

121.    The Church has no ready alternatives available to accomplish its religious mission.

122.    Further, the CUP process would impose significant delay, uncertainty, and expense on the Church.

123.    Due to Clay Glasgow's April 2006 reassurances that the Church could build in phases without applying for a new CUP, and the County's approval of the square footage and off-street parking the Church now seeks to build, the Church had a reasonable basis to expect that it could build in phases in the way currently proposed.

124.    Further, the internal County email exchange with Director McCallister in 2013 shows the Church has "established" its church land use and there is no reasonable basis to force it to go through the CUP process a second time.

125.    Under the totality of the circumstances, the County is placing a substantial burden on the Church's religious exercise.

126.    If the Church commenced building Phase 2 without obtaining a new or modified CUP as the County demands, there would be significant adverse practical consequences for the Church in that the County would take enforcement measures to prevent the building, including fines and other punishment.

127.    The County's imposition of this substantial burden on the Church is not the least restrictive means of achieving any compelling government interest.

128.    As a direct result of the County's violations of RLUIPA's substantial burden provision, as alleged above, the Church is suffering irreparable harm for which there is no adequate remedy at law.

129.    Furthermore, as a direct result of the County's violations of RLUIPA's substantial burden provision, as alleged above, the Church is entitled to recover damages, costs, and attorney fees.

130.    The Church therefore respectfully requests the relief identified below.

### FOURTH CLAIM FOR RELIEF

**Violation of the Right to Free Exercise of Religion Guaranteed by the First Amendment to the United States Constitution (42 USC § 1983)**

131.    Plaintiff incorporates the allegations in the preceding paragraphs by reference.

132.    As stated above, the Church's sincere religious beliefs dictate that it proceed with Phase 2 of its building plan. The County has prohibited the Church from proceeding.

133.    The County's application of the ZDO in this case is an individualized assessment of the Church and its property.

134.    The County's enforcement of its ZDO in this case is not neutral or of general applicability.

135.    The County's method of enforcing its ZDO allows for granting exceptions to strictures such as those placed on the Church.

136.    The County's method of enforcing its ZDO treats comparable secular activities more favorably than religious exercise such as the Church's.

137.    The County's actions in this matter are not narrowly tailored to any compelling government interest.

138.    The County's actions in this case are not rationally related to any legitimate government interest.

139.    As a direct result of the County's violations of the U.S. Constitution, as alleged above, the Church is suffering irreparable harm for which there is no adequate remedy at law.

140.    Furthermore, as a direct result of the County's violations of the U.S. Constitution, as alleged above, the Church is entitled to recover damages, costs, and attorney fees.

141.    The Church therefore respectfully requests the relief identified below.

### FIFTH CLAIM FOR RELIEF

#### Estoppel

142.    Plaintiff incorporates the allegations in the preceding paragraphs by reference.

143.    Under Oregon law, a governmental agency may be estopped from asserting a claim inconsistent with a previous position that it has taken. See, e.g., *Dept. of Transportation v. Hewett Professional Group,* 321 Or. 118, 126, 895 P.2d 755 (1995).

144.    In this case, Defendant County, through its official Clay Glasgow, took the position in 2006 that the Church could build in phases without the need to reapply for CUP approval.

145.    Mr. Glasgow had the authority as a County planning official to make the statements contained in his April 2006 email.

146.     Due to Mr. Glasgow's position and the nature of his statements, it was reasonable for the Church to rely on Mr. Glasgow's guidance to proceed with the phased building plan.

147.     The Church did, in fact, rely on Mr. Glasgow's statements when it elected to proceed with a phased building approach.

148.     Further, other actions of the County, including the 2013 email exchange with Director McCallister show that the County took the position that the Church had "established" its uses for purposes of complying with the CUP.

149.     Due to its actions, including but not limited to inducing the Church to build in phases, the County should be estopped from asserting its current position of forcing the Church to apply for a new or modified CUP prior to proceeding with Phase 2 of its building project.

150.     The Church therefore respectfully requests the relief identified below.

## SIXTH CLAIM FOR RELIEF

### Violation of Article I, Sections 2 and 3 of the Oregon Constitution

151.     Plaintiff incorporates the allegations in the preceding paragraphs by reference.

152.     Article I Sections 2 and 3 of the Oregon Constitution guarantee the free exercise of religiously motivated actions.

153.     The Church's building of Phase 2 is the exercise of religion under the Oregon Constitution.

154.     The manner in which the County has applied the ZDO to the Church has interfered with the Church's religious freedom.

155.     The County's interference with the Church's free exercise of religion is not essential to accomplish any overriding governmental interest.

156.     The County's actions are neither reasonable nor neutral towards religion.

157.    The County has therefore violated the Article I Sections 2 and 3 of the Oregon Constitution.

158.    As a direct result of the County's violations of the Oregon Constitution, as alleged above, the Church is suffering irreparable harm for which there is no adequate remedy at law.

159.    Furthermore, as a direct result of the County's violations of the Oregon Constitution, as alleged above, the Church is entitled to recover damages, costs, and attorney fees.

160.    The Church therefore respectfully requests the relief identified below

## PRAYER FOR RELIEF

WHEREFORE, the Church respectfully requests a judgment against Defendant Clackamas County and that this Honorable Court:

a.    Adjudge, decree and declare the rights and other legal relations of the parties to the subject matter in controversy in order that such declaration shall have the force and effect of final judgment and that the Court retains jurisdiction of this matter for the purpose of enforcing the Court's Order;

b.    Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declare that the Church may immediately proceed with Phase 2 of its building project as described herein and direct the County to issue all necessary permits and approvals;

c.    Pursuant to 28 U.S.C. § 2202, Fed. R. Civ. P. 64, 42 U.S.C. § 1983 and 42 U.S.C. § 2000cc-4 preliminarily and permanently enjoin the County from enforcing the ZDO to prevent the Church from proceeding with Phase 2 of its building project;

d.    Pursuant to 28 U.S.C. § 2202, Fed. R. Civ. P. 65, 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and 42 U.S.C. § 2000cc-2(a), award the Church all necessary and appropriate relief including compensatory and nominal damages;

e.      Declare that the County has violated the Church's rights under the aforementioned provisions of RLUIPA and the First Amendment of the United States Constitution;

f.      Pursuant to 42 USC § 1988, 42 USC § 2000cc-2(d), Fed. R. Civ. Pro. 54(d) and other applicable law, award the Church its reasonable attorney fees, costs; and

g.      Grant such other and further relief as the Court deems equitable, just and proper.

**Verification**

Pursuant to 28 U.S.C. § 1746 I, ____Brett Meador____, hereby declare under penalty of perjury that the factual allegations contained in the complaint are true, and that I have personal knowledge of the same and can attest to the same at trial.

Athey Creek Christian Fellowship

By: _____

Its:

        Senior Pastor

Dated: October __, 2022

Dated this 1st day of November, 2022.

DUNN CARNEY ALLEN HIGGINS & TONGUE LLP

/s/ Ty K. Wyman
**Ty K. Wyman, OSB 925083**
Email: twyman@dunncarney.com
*Pro hac vice* motion to be filed for:

**Daniel P. Dalton (MI. P44056)**
Email: Ddalton@daltontomich.com
**Lawrence Opalewski (MI. P77864)**
Email: Lopalewski@daltontomich.com

Attorneys for Plaintiff Athey Creek Christian
Fellowship