UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


ATHEY CREEK CHRISTIAN
FELLOWSHIP,

      Plaintiff,        Case No. 3:22-cv-01717-YY

   v.            OPINION AND ORDER

CLACKAMAS COUNTY,

      Defendant.

YOU, Magistrate Judge.

   In 2006, plaintiff Athey Creek Christian Fellowship secured a conditional use permit

("CUP") to build a large church building on its property in West Linn, Oregon. For various

reasons, plaintiff was unable to build the entire project at the outset, and instead constructed a

smaller "phase 1" building sometime around 2013. In 2022, plaintiff was ready to build "phase

2", i.e., the remainder of the project, and attempted to acquire the required building permits from

defendant Clackamas County. The County refused to issue the permits on the basis that the 2006

CUP had expired because plaintiff had failed to acquire the building permits for phase 2 or seek

an extension of the 2006 CUP during the two-year time period for which the 2006 CUP was

valid. Plaintiff then sued the County alleging that the County's zoning scheme—which at the

time required churches, but not some other types of secular uses, to obtain a conditional use

permit in the zoning category applicable to plaintiff's property—and refusal to issue building

permits under the 2006 CUP violated plaintiff's rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), and its constitutional right to freely exercise its religious beliefs. Plaintiff also asserts that the County should be estopped from now preventing plaintiff from building phase 2 because it initially told plaintiff that building in phases was "fine" and allowed plaintiff to build phase 1 in 2013. Currently pending is the County's motion for summary judgment on all of plaintiff's claims. ECF 43. Plaintiff has also moved for summary judgment on its RLUIPA substantial burden claim. ECF 42.

As explained more fully below, plaintiff is not entitled to equitable estoppel because the alleged statements from the County regarding building in phases and allowing plaintiff to build phase 1 in 2013 were not material misstatements of facts upon which plaintiff could have reasonably relied to believe that the conditions in the 2006 CUP would not be enforced. Plaintiff did not challenge the zoning scheme or the conditions in the 2006 CUP when the County initially approved the entire project back in 2006, and the unsatisfied condition of the 2006 CUP at the heart of this case—that plaintiff had two years to obtain the necessary permits or to seek an extension of the 2006 CUP—were not oppressive. At bottom, plaintiff indisputably failed to satisfy this straight-forward condition through no fault of the County, and there is no evidence suggesting that the County's actions in enforcing this condition is arbitrary, pretextual, or otherwise unfairly targeted at plaintiff's religious use. Any future claim based on the County's recently amended zoning scheme that allows "places of worship" as a primary rather than a conditional use is not ripe until plaintiff engages in that process by filing a new application. The County's motion is granted as to all of plaintiff's claims, and plaintiff's motion is denied.

//

//

I.    **Background**

The factual history that follows is necessarily detailed and complex to describe the

background that led to the current dispute and to resolve the parties' currently pending motions.

Plaintiff bought a property in West Linn, Oregon, in 2005 with the goal of building a new church

for its growing congregation.[1] The property was zoned RRFF-5, and under the Clackamas

County's Zoning and Development Ordinance ("ZDO") in place at the time, a church located in

RRFF-5 district needed a conditional use permit before building and operating.[2] In 2006,

plaintiff began the process of seeking a conditional use permit to allow it to construct a church

on the property.[3] Plaintiff emailed a County staffer, Clay Glasgow, with a question about seeking

a conditional use permit while "phasing" the project:

> Hi Clay . . .
>
> We are helping put together the CUP application for the Athey
> Creek Community Fellowship, which I think you have discussed in
> one or more meetings. I have a question for you on phasing.
>
> The Church would prefer to build out the entire project in a single
> phase, and this is how we have based our planning so far.
> However, there is a possibility that for financial reasons they may
> need to phase some of the site work (IE, parking), and perhaps
> have the multipurpose building and some of the interior work in
> the main building constructed as need and funding dictate. If we go
> in as a single phase, in both the CUP and Design Review
> processes, is there any reason why staging the permits and
> construction would be a problem later?[4]

Glasgow replied:

> Depending on the level of detail you have for the final build-out
> portion, I would suggest getting the whole thing approved from the
> get go. Phasing would be fine. Remember though, in order to get

---

[1] Compl. ¶ 27, ECF 1. The complaint is verified, and some facts are pulled from it. *See* Compl.
21, ECF 1; *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995).
[2] Compl. ¶¶ 8–9, ECF 1.
[3] *Id.* ¶ 10.
[4] Munns Decl., Ex. B at 1, ECF 48-2 (missing space edited).

> approval for all phases you will need complete detail on all of
> those phases. Worst case scenario with such a submittal is that the
> CU would be approved for the total development, but each phase
> would need to come in for specific Design Review. The more
> detail you have on the end phases the better, and we may just be
> able to approve, completely, the CU and DR in one shot.[5]

On May 6, 2006, plaintiff applied for a conditional use permit to build a church totaling

123,400 square feet on the site that included a 105,00 square-foot church building, a 16,000

square-foot multi-use building, a 2,400 square-foot maintenance building, and 900 parking

spaces.[6] The Clackamas County Land Board held a hearing on plaintiff's application on July 13,

2006.[7] After receiving testimony and making various findings (such as whether the property was

a "suitable location" for a church, or whether the application was subject to the Rural Section of

the Land Use Chapter of the Comprehensive Plan), the hearings officer approved plaintiff's CUP

"subject to [certain] conditions[.]"[8] Condition 29 of the 2006 CUP is particularly important to

this dispute, and it provides:

> This approval is valid for a period of two years from the date of
> final written decision. If the proposed use has not been established
> within that time, the approval shall expire unless a timely
> application for extension of the permit is filed with the County
> under ZOO Section 1203.03 and the application is approved. The
> conditional use approval is implemented when all necessary
> permits for the development have been secured and are
> maintained.[9]

After it received the 2006 CUP, plaintiff decided to build the project in phases "[d]ue to

economic and financial circumstances during the mid-2000s."[10] The first phase of this project

was a smaller portion of the original proposed church building, totaling about 44,000 square

---

[5] *Id.*
[6] Munns Decl., Ex. A at 1, ECF 48-1.
[7] *Id.* at 1–2.
[8] *Id.* (hereinafter the "2006 CUP").
[9] Munns Decl., Ex. A at 41, ECF 44-3.
[10] Compl. ¶ 11, ECF 1.

feet.[11] In May of 2007, plaintiff obtained an engineering permit for on-site and off-site parking and transportation improvements (Permit No. SC005207); a building permit for "NEW BLDG" (Permit No. B0217507); a mechanical permit for "NEW BLDG PHASE 1" (Permit No. B0217707); and a plumbing permit for "PHASE 1 EXTERIOR" (P0120907).[12] Plaintiff then obtained an electrical permit for "NEW BLDG PHASE 1" (Permit No. E0537707) on August 15, 2007, and an electrical permit for "TEMP POWER TO BLDG & TRAILERS" (Permit E0660507) on October 12, 2007.[13] The engineering permit was related to conditions of the 2006 CUP that required plaintiff to make certain improvements to county roads and other infrastructure around the property to accommodate the more extensive use of the property that plaintiff desired.[14] It is not clear from the record when plaintiff completed the transportation improvements, but plaintiff asserts that it spent approximately $2.3 million in doing so.[15]

Nor is it clear precisely when plaintiff actually began construction on phase 1 of the project. However, on August 21, 2013, plaintiff sent a letter to the County whereby plaintiff sought to add a "partial daylight basement under the originally approved building footprint," and asserted that it should "be viewed as a minor adjustment and would still fall under our existing Conditional Use Permit."[16] A few weeks prior to that letter, a Senior Traffic Engineer from the County sent an email to the County Planning & Zoning Division inquiring about the "status of

---

[11] *See id.* ¶ 59.
[12] Parties' Joint Submission Regarding Permits 3, ECF 59. Following the hearing on the parties' cross-motions for summary judgment, the court ordered the parties to jointly submit a "supplemental brief outlining the permits that plaintiff obtained between 2006 and 2015, and explaining what each permit was for, or to what part of the project the permit relates[.]" Minutes of Proceedings (Feb. 16, 2024), ECF 58.
[13] Parties' Joint Submission Regarding Permits 2, ECF 59.
[14] Pl. Mot. Summ. J. 14, ECF 42; 2006 CUP at 36–41, ECF 48-1.
[15] Pl. Mot. Summ. J. 14, ECF 42.
[16] Munns Decl., Ex C at 6, ECF 48-3.

Athey Creek Church. Are they still approved? I assume they are and have been getting multiple extensions?"[17] The following internal email from Sandy Ingalls in the County's Planning & Zoning Division seems to summarize the investigation into plaintiff's 2006 CUP in 2013:

> I looked up the decision for 20356-06-C (tax Lot 21E29 00900) was approved on 9/25/06 [*sic*]. I don't see any time extensions to that conditional use permit in Permits Plus. This approval is valid for a period of two years from the date of final written decision. If the proposed use was not established within that time, the approval would expire unless a timely application for extension of the permit is filed with the County under ZDO Section 1203.03 and the application is approved. The conditional use approval is implemented when all necessary permits for the development have been secured and are maintained.
>
> There are a lot of building permits for that site. Most of the permits are in the "issue, withdrawn, applied, expired or void" states. Only 3 have been finalled.[18]

Deana Mulder from the County Department of Transportation & Development also wrote to Ingalls:

> I issued the Development Permit and they have completed their extensive off-site improvements. In the past this has been enough to keep their land use active so they can apply for permits even after the two years after the decision. They are also under that understanding as well and are just trying to recoup from the downturn in the economy and the hundreds of thousands of dollars that they invested into the road improvements to accommodate their future traffic impacts. Please let us all know what you and Mike determine the status of the application to be.[19]

In the meantime, plaintiff followed-up on the August 2013 letter with an email to Mike McCallister, the County's Planning Director at the time, about the proposed daylight basement:

---

[17] *Id.* at 4.
[18] *Id.*
[19] *Id.* at 3.

Hello Mike,

Your assistance in the land use approvals granted Athey Creek Christian Fellowship (ACCF) has been much appreciated. Even though the economy took a major downturn in 2007, causing us to put a hold on our construction project, our Conditional Use Permit has been kept current by insuring that all of our building permits were both obtained and kept active to date.

As we have relayed to you in previous conversations, it is ACCF's desire to build the smaller Phase [2] building ahead of our initially identified Phase [1] building. Cost is the main driving force behind that decision. We would maintain the footprint and location of the Phase [2] building as in our previously approved CUP. Only adding a partial daylight basement under a portion of this footprint to gain additional space needed, but still considerably less than our initially approved Phase I building.

As you have seen by the provided artistic renderings, floor plans and landscape plans, the change is both minimal (taking advantage of the natural slope of the land) and will look essentially unchanged from the Elk Road perspective. It is our hope that this [*sic*] something that you can approve and thus allowing us to proceed with our building plans.

It is because of the fact that time is becoming a rapidly diminishing commodity to ACCF that we ask that this approval decision be rendered as soon as practical. The building we are currently leasing in Wilsonville expires in about 20-months - and will not be able to be renewed or extended. ACCF is in a position where a fast-tracking of this Phase [2] buildings design and construction needs to be expedited to meet that deadline - and obtaining your approvals is the first step in that process.[20]

McCallister responded to plaintiff regarding the daylight basement a few weeks later:

Sandy Ingalls and I have reviewed the information (existing and proposed site plans and architectural renderings) with your letter dated August 21, 2013. The proposed changes are substantially consistent with the original conditional use permit. Therefore no additional land use review is required. The final design of the project is subject to all the conditions of approval in the original conditional use permit (File No. 20356-06-C.[21]

---

[20] *Id.* at 1.
[21] *Id.* (missing closing parenthesis in original).

7 – OPINION AND ORDER

Plaintiff went on the construct phase I, apparently completing it sometime in 2015. *See* Compl. ¶ 54, ECF 1.

Fast-forward to sometime in 2022, though again, the record is not clear regarding when or how exactly the following events occurred. Plaintiff "notified the County of its intention to commence Phase 2" of the project. Pl. Mot. Summ. J. 6, ECF 42. This second phase of construction on the main church building would expand the existing 44,000 square foot building built in phase 1 to approximately 123,400 square feet. The County "stated that it would not issue building permits for Phase 2 without a new or modified CUP" because the 2006 CUP had expired and plaintiff's right to develop the remainder of the project had not vested under Oregon law.[22]

The parties exchanged letters from their attorneys about the 2006 CUP.[23] County counsel wrote the following:

> The County generally agrees and acknowledges the facts surrounding the situation as you have presented, except for one important point that forms the basis of the apparent disagreement between the Church and the County at this time. The 2006 Conditional Use Permit incorporated a condition of approval, identified as condition no. 29, which provided:
>
>> "This proposal is valid for a period of two years from the date of final written decision. If the proposed use has not been established within that time frame, the approval shall expire unless a timely application for extension of the permit is filed with the County under ZDO 1203.03 and the application is approved. The conditional use approval is implemented when all necessary permits for the development have been issued and are maintained."
>
> The County has maintained that the Church failed to abide by the terms of this condition, since it did not obtain all necessary permits for the development within the two-year period stated therein, and

---

[22] Pl. Reply 2, ECF 52; *see also* Compl., Ex. F at 2, ECF 1-1.
[23] *See* Compl., Exs. F & G, ECF 1-1 at 84–100.

did not file an application for extension of the permit. As a result, the County considers the church's previous entitlement to have expired such that the Church cannot continue to implement the portion of the previously approved development that had failed to receive permits during the period noted in the condition. Even though the status of the prior permit does not allow the Church to continue the [*sic*] implement the prior approval, processes are available, such as a modification of the prior conditional use approval or a separate conditional use permit approval, that could allow the Church to obtain approval for the expansion that it seeks.[24]

Plaintiff did not seek a modification of the 2006 CUP or file a new application for a separate conditional use permit for phase 2. Instead, plaintiff filed this suit in November of 2022, alleging that the zoning ordinance that required churches to apply for a conditional use permit and did not allow churches as a primary use is facially invalid under the RLUIPA, and that the County violated plaintiff's rights under the RLUIPA, the First Amendment, and the Oregon Constitution by not allowing plaintiff to build phase 2 of the project and forcing plaintiff to re-apply for a new or modified conditional use permit. Compl. ¶¶ 72–141, 151–60, ECF 1. Alternatively, plaintiff asserts that the County should be estopped from now asserting that the 2006 CUP does not authorize plaintiff to build phase 2, based either on the 2006 representations from County staff that phasing would be "fine" or on the County's permission in 2013 for plaintiff to add a daylight basement to phase I. *Id.* ¶¶ 142–50.

Plaintiff moved for a preliminary injunction in December of 2022 that sought to enjoin the County from enforcing its zoning ordinances and blocking plaintiff from constructing phase 2. ECF 14. The court denied the motion in March of 2023, in part because "[plaintiff] has not applied for a new or modified CUP and has asserted no basis to believe such an application will be denied." Order (Mar. 16, 2023) 6, ECF 31.

---

[24] Compl., Ex. G at 1, ECF 1-1.

After the preliminary injunction was denied, but before the present motions were filed, Clackamas County amended its zoning code to allow "places of worship" as a primary use, rather than a conditional use, in most zoning districts, including the RRFF-5 district that applies to plaintiff's property.[25] Both parties moved for summary judgment after Clackamas County enacted these zoning amendments. The County primarily asserts that plaintiff's claims are either moot or unripe—specifically, that they are moot because the zoning ordinances no longer treat religious uses differently than secular uses, and they are unripe because plaintiff has not applied to build its church under this new zoning scheme. Def. Mot. Summ. J. 5–10, ECF 43. Plaintiff's motion for summary judgment focuses exclusively on the merits of its RLUIPA substantial burden claim and asks the court to "enter an order directing the County to issue land use approval for Phase 2 of the Church's building project and to expeditiously process all necessary administrative permits" and further for an order that the County "has violated the substantial burden provision of RLUIPA and setting a trial or evidentiary hearing as to the amount of damages." Pl. Mot. Summ. J. 27, ECF 42.

## II.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must go beyond the pleadings and identify

---

[25] Munns Decl., Ex. E at 38, ECF 44-5.

"specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citing Fed. R. Civ. P. 56(e)).

The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## III.    Equitable Estoppel

The County's motion for summary judgment as to plaintiff's estoppel claim is analyzed first because if the County is estopped from asserting that plaintiff cannot proceed with phase 2 of its development plans based on defendant's prior representations, then the analysis of plaintiff's RLUIPA or constitutional claims may be significantly narrowed or altogether mooted. *See Guatay Christian Fellowship v. Cnty. of San Diego*, No. 3:08-cv-JM-BLM, 2009 WL 10678645, at *5 (S.D. Cal. Sept. 16, 2009), *aff'd*, 670 F.3d 957 (9th Cir. 2011) ("The court will consider the estoppel argument first because, at a theoretical level, if the property already possesses a MUP authorizing religious assembly on the property then the County's insistence on obtaining a second, or redundant, MUP may impact the RLUIPA and § 1983 claims.").[26]

---

[26] The question to answer here is not whether defendant's interpretation of the 2006 CUP and its conditions was actually correct. As both parties recognized at the hearing on the motions, that question is a matter of state law to which the RLUIPA and section 1983 do not apply. *See Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 970 (9th Cir. 2011) ("A claim alleging that the County was wrongfully enforcing its zoning ordinance because the Church already possessed a valid Use Permit would be a matter of county or state law, the remedy for which should be sought through the County's administrative process or through state courts. RLUIPA and § 1983 provide remedies for violations of constitutional rights in the application of local zoning laws, not for violations of local zoning ordinances themselves.").

"[U]under appropriate circumstances, an agency of the government may be estopped to assert a claim inconsistent with a previous position taken by it." *State By & Through Dep't of Transp. v. Hewett Pro. Grp.*, 321 Or. 118, 126 (1995). Such circumstances, however, are "rare" and the doctrine is "applied cautiously." *Emp. Div., Dep't of Hum. Res. v. W. Graphics Corp.*, 76 Or. App. 608, 612 (1985). To establish equitable estoppel under Oregon law, there "must (1) be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; (5) the other party must have been induced to act upon it[.]" *Coos Cnty. v. State*, 303 Or. 173, 180–81 (1987) (quoting *Oregon v. Portland Gen. Elec. Co.*, 52 Or. 502, 528 (1908)). "Courts generally have held that the misrepresentation must be one of existing material fact, and not of intention, nor may it be a conclusion from facts or a conclusion of law." *Id.*

Plaintiff relies on two statements for its estoppel argument. First, plaintiff points to Glasgow's statement made in 2006 before plaintiff obtained the 2006 CUP in which Glasgow suggested "getting the whole [project] approved from the get go" and stated that "phasing [the project] would be fine." Compl. ¶ 144, ECF 1. Second, plaintiff relies on McCallister's 2013 email stating that the proposed daylight basement changes were "substantially consistent with the original conditional use permit" and therefore "no additional land use review [was] required" for plaintiff to build the daylight basement as part of phase I. *Id.* ¶ 148. Plaintiff asserts that it reasonably relied on these statements to conclude that it "could build in phases without needing additional CUP approval" and that in 2013, plaintiff had "established its uses for purposes of complying with the [2006] CUP." Pl. Resp. 22, ECF 50 (internal quotation marks omitted).

Plaintiff's estoppel claim necessarily fails because plaintiff cannot show reasonable reliance on misrepresentations based on these communications. Neither statement is a "false representation" vis-à-vis the 2006 CUP and defendant's position that it expired before plaintiff attempted to build phase 2. As set out above, Condition 29 of the 2006 CUP provided as follows:

> 29. This approval is valid for a period of two years from the date of final written decision. If the proposed use has not been established within that time, the approval shall expire unless a timely application for extension of the permit is filed with the County under ZOO Section 1203.03 and the application is approved. The conditional use approval is implemented when all necessary permits for the development have been secured and are maintained.[27]

Glasgow's statement that building in phases was "fine" is entirely consistent with the 2006 CUP—plaintiff could build in phases so long as it either (1) obtained all the permits it needed to complete the entire project in the two years that the 2006 CUP was active, or (2) sought an extension of the 2006 CUP. There is no dispute, however, that plaintiff did not attempt to obtain the building permits for phase 2 until sometime in 2022, and that plaintiff did not apply for an extension of the 2006 CUP at any point. Nothing in Glasgow's statement indicated that the yet-to-be issued 2006 CUP would never expire, and given the clear language of Condition 29, any belief on the part of plaintiff that 2006 CUP was somehow perpetual and did not require further action—such as securing and maintaining "all necessary permits" or timely seeking an extension of the 2006 CUP—was not reasonable.

Nor could plaintiff have reasonably relied on the County's communications in 2013 regarding plaintiff's proposed changes to the phase 1 building to add a daylight basement to conclude that the 2006 CUP would never expire or that its conditions would never apply. As

---

[27] Munns Decl., Ex. C at 41, ECF 44-3.

detailed above, McCallister responded via email to plaintiff regarding the daylight basement as follows:

> Sandy Ingalls and I have reviewed the information (existing and proposed site plans and architectural renderings) with your letter dated August 21, 2013. The proposed changes are substantially consistent with the original conditional use permit. Therefore no additional land use review is required. The final design of the project is subject to all the conditions of approval in the original conditional use permit (File No. 20356-06-C.[28]

Plaintiff asserts that through this communication, the County confirmed that the "CUP was still active, and [that plaintiff] had 'established' its use." Pl. Mot. Summ. J. 5, ECF 42. But plainly, the email does not contain the word "established" nor suggest that all the conditions of the 2006 CUP had been met; in fact, McCallister's email specifically stated that the "final design of the project *is subject to all the conditions of approval in the original conditional use permit*," which necessarily includes Condition 29. And, as explained above, plaintiff timely pulled all the necessary building permits for phase 1 of the project in 2007 during the two-year window provided for in Condition 29 of the 2006 CUP. Parties' Joint Submission Regarding Permits 2–5, ECF 59. There is nothing inconsistent about the County's actions in allowing the adjustment to the phase 1 plan to for a daylight basement without further land use review in 2013, and then nearly a decade later taking the position that plaintiff had failed to keep the 2006 CUP active to allow it to pull the permits for phase 2 of the project.

Finally, to the extent plaintiff asserts that County officials "internally considered whether [plaintiff's] CUP had expired in 2013 [and] decided it had not," there is no evidence that plaintiff knew at any time prior to conducting discovery in this litigation about any such investigation by the County. *See* Pl. Reply 2, ECF 52. Thus, there is no evidence that plaintiff relied, reasonably

---

[28] *Id.*, Ex D at 1 (missing closing parenthesis in original).

or otherwise, on these communications internal to the County to take any action. *See Guatay Christian*, 670 F.3d at 974 (ruling that the plaintiff could not reasonably rely on, among other things, electrical permits issued by the county to a third party to establish reasonable reliance for equitable estoppel because the plaintiff only learned of that permit through discovery).

## IV.    RLUIPA Substantial Burden

The "RLUIPA has two separate provisions limiting government regulation of land use." *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1169 (9th Cir. 2011). The first one, at issue here, "prohibits governments from implementing land use regulations that impose 'a substantial burden' on religious exercise unless the government demonstrates that they further a 'compelling governmental interest, by the 'least restrictive means.' " *Id.* (simplified).[29]

Both plaintiff and the County move for summary judgment on plaintiff's RLUIPA substantial burden claim. The County's motion largely asserts that plaintiff's substantial burden claim is either not ripe or has been mooted because the ZDO ordinance has been amended to allow "places of worship" as a primary, rather than a conditional, use and plaintiff has not yet filed any application for primary use. *See* Def. Mot. Summ. J. 2, ECF 43. The County also asserts that notwithstanding any issues regarding ripeness or mootness, the burdens imposed on plaintiff by engaging in the land use review process are not substantial and therefore plaintiff's claim fails as a matter of law. *See id.* at 8–10.

Plaintiff focuses on the merits of the substantial burden claim and argues that the totality of the circumstances, including the initial impositions of the conditions as part of the 2006 CUP

---

[29] The second provision, which "prohibits a government from imposing a land use restriction on a religious assembly 'on less than equal terms' with a nonreligious assembly," *Centro Familiar*, 651 F.3d at 1169, is addressed below.

process, the "millions" of dollars that plaintiff spent on improving public infrastructure to satisfy one of the conditions of the 2006 CUP, and the County's insistence now that plaintiff must file an additional "primary use" application for its planned phase 2, when the County had already approved its plans for phase 2 as part of the 2006 CUP, are a substantial burden on its religious exercise. Pl. Mot. Summ. J. 13–18. The process for an additional primary use application, plaintiff contends, could result in delay, uncertainty, and further "exactions" based on a so-called "Type II" design review that could require plaintiff to make even more infrastructure improvements or substantial alterations to its proposed designs for phase 2. *Id.* at 9–10; *see also* Pl. Reply 9, ECF 52. Plaintiff states that it is burdened by the delay because it has to turn worshippers away and incur costs related to the delay in constructing phase 2, for example over $3 million in "additional financing costs due to significantly higher interest rates[.]" Pl. Mot. Summ. J. 19, ECF 42.

> A.   **Ripeness**

One of defendant's primary arguments in favor of its own motion for summary judgment and against plaintiff's is that plaintiff's RLUIPA and First Amendment claims are not ripe because "plaintiff has not filed any applications to obtain any land use review that remains required under the ZDO, as amended for Phase 2 of its project." Def. Mot. Summ. J. 5, ECF 43. One of the limits on federal courts' subject matter jurisdiction comes from Article III of the federal Constitution, which empowers federal courts to decide only "cases" or "controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). "Ripeness is one component of the Article III case or controversy requirement. The 'basic rationale' of the ripeness requirement is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.' " *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 835

(9th Cir. 2012) (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 148 (1967)). In the context of

land use claims, the Ninth Circuit treats ripeness as a matter of "both Article III and prudential

concern." *Guatay Christian*, 670 F.3d at 980.

 To determine whether a RLUIPA claim is ripe, the Ninth Circuit has applied the

*Williamson County* final decision requirement for Fifth Amendment takings claims to RLUIPA

claims. *Guatay Christian*, 670 F.3d at 980. "The *Williamson County* final decision requirement

calls for a final adjudication of the injury at the local level prior to filing federal claim." *Daniel*

*& Francine Scinto Found. v. City of Orange*, No. 8:15-cv-01537-DOC-JCG, 2016 WL 4150453,

at *10 (C.D. Cal. Aug. 3, 2016) (quoting *Davis v. City of Selma*, No. 1:12-cv-01362-AWI, 2013

WL 3354443, at *5 (E.D. Cal. July 3, 2013)). "The final decision requirement is a ripeness

consideration because it helps the court avoid entanglement in abstract disputes which could be

more easily resolved at a local level." *Davis*, 2013 WL 3354443 at *5; *see also Guatay*

*Christian*, 670 F.3d at 981 ("[W]e cannot even begin to determine that the County has

definitively barred the Church from using the building as it wishes until it has had the

opportunity to evaluate a completed application and has determined how it will apply its land use

regulations to the Church.").

 The parties dispute the continuing vitality of *Guatay Christian* in light of recent Supreme

Court rulings that have overturned *Williamson County* and have seemingly relaxed the standard

for analyzing the "final decision" requirements. *See* Pl. Reply 5–7, ECF 52; Def. Reply 3-5, ECF

54. As the Ninth Circuit in *Guatay Christian* explained, "[i]n addition to the final decision

requirement, the Court in *Williamson County* articulated a second requirement governing the

ripeness of a takings claim: exhaustion of the state remedial process. The Court reasoned that the

process might yield the property owner just compensation, thereby mooting his takings claim

against the government." 670 F.3d at 977. The Supreme Court recently overruled *Williamson County*'s exhaustion requirement, *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 203 (2019), although the finality requirement remains. *See Pakdel v. City & Cnty. of San Francisco, California*, 594 U.S. 474, 478 (2021). The Court in *Pakdel* did, however, clarify that the "finality requirement is relatively modest. All a plaintiff must show is that there is no question about how the regulations at issue apply to the particular land in question." 594 U.S. at 478 (simplified); *see also Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, No. 21-2822, 2022 WL 1697660, at *2 (2d Cir. May 27, 2022) ("*Pakdel* reiterated . . . that the zoning authority must have reached a final decision on a plaintiff's land-use application for the claims to be sufficiently ripe to support a court's exercise of jurisdiction.").

Thus, *Guatay Christian* remains controlling law to the extent that it requires a plaintiff asserting an RLUIPA claim to show that there has been a "final decision," though only "de facto" finality is required in that a plaintiff must show "there is no question" as to how the regulations apply to its property. And to the extent that plaintiff's substantial burden claim is based on the 2006 CUP and the County's determination that the 2006 CUP is expired so that no additional building permits may be issued pursuant to it, that claim is ripe because there is no question about how the County is applying its land use regulations to plaintiff's property. To the extent, however, that plaintiff seeks to include as part of that claim any hypothetical burden that may result from a yet-to-be-filed application to build phase 2 under the County's newly amended zoning scheme allowing "places of worship" as a primary use, those portions are not yet ripe for review or are otherwise too speculative to be part of the analysis. *See Guatay Christian*, 670 F.3d at 982 (explaining that without knowing the "definitive, particularized obligations" that resulted

from a land use application and review, "we cannot determine whether this permit application

process itself constitutes a substantial burden on the Church").

      **B.**      **Merits of RLUIPA Substantial Burden Claim**

      Having determined that at least a portion of plaintiff's substantial burden claim is ripe,

the next task is to evaluate the parties cross-motions for summary judgment on that claim. The

substantial burden provision of RLUIPA provides:

> No government shall impose or implement a land use regulation in
> a manner that imposes a substantial burden on the religious
> exercise of a person, including a religious assembly or institution,
> unless the government demonstrates that imposition of the burden
> on that person, assembly, or institution—
>
>     (A) is in furtherance of a compelling governmental
>         interest; and
>
>     (B) is the least restrictive means of furthering that
>         compelling governmental interest.

42 U.S.C. § 2000cc(a)(1). "[A] substantial burden 'must place more than inconvenience on

religious exercise.' " *Id.* (quoting *Guru Nanak*, 456 F.3d at 988). Instead, a challenged land use

regulation must impose a "significantly great restriction or onus upon [religious] exercise." *Int'l

Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011)

(quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004));

*see also Guru Nanak*, 456 F.3d at 988–89. This is a fact-intensive analysis that considers the

totality of the circumstances, including but not necessarily limited to "whether the government's

reasons for denying an application were arbitrary, such that they could easily apply to future

applications by the religious group; whether the religious group has ready alternatives available

to it or whether the alternatives would entail substantial uncertainty, delay, or expense; and

whether the religious group was precluded from using other sites in the city." *New Harvest Christian Fellowship v. City of Salinas*, 29 F.4th 596, 602 (9th Cir. 2022).

The totality of the circumstances here do not show a substantial burden. First, it is undisputed that the County approved plaintiff's proposed use of the property through the 2006 CUP. That distinguishes this case from the vast majority of cases cited by the parties, or found by the court through research, involving a substantial burden claim under the RLUIPA, where the zoning authority initially denies some kind of land use application and the plaintiff then brings suit. *See New Harvest*, 29 F.4th at 600 (holding that city's denial of church's request for zoning code amendment and application for conditional use permit did not impose a substantial burden under RLUIPA); *Guru Nanak*, 456 F.3d at 985 ("[T]he County's denial of Guru Nanak's CUP application constituted a substantial burden"). Neither party cited to a RLUIPA case where a plaintiff was granted a conditional use permit but was later prevented from continuing to develop the property under that permit after it expired or otherwise was not fully implemented.

As a general matter, it is not a violation of RLUIPA's substantial burden provision to impose some land use restrictions on religious uses. *See San Jose Christian Coll.*, 360 F.3d at 1035 (explaining that while the "costs, procedural requirements, and inherent political aspects" of the land use permit process "may contribute to the ordinary difficulties associated with location (by any person or entity, religious or nonreligious) in a large city, they do not render impracticable the use of real property . . . for religious exercise") (quoting *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752 (7th Cir. 2003)); *see also Petra Presbyterian Church v. Vill. of Northbrook*, 489 F.3d 846, 851 (7th Cir. 2007) ("Religious organizations would be better off if they could build churches anywhere, but denying them so unusual a privilege could not reasonably be thought to impose a substantial burden on them."); *Midrash*

*Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004), *cert. den.* 543 U.S.

1146 (2005) ("Requiring churches and synagogues to apply for CUPs allows the zoning

commission to consider factors such as size, congruity with existing uses, and availability of

parking. We have found that such reasonable 'run of the mill' zoning considerations do not

constitute substantial burdens on religious exercise.").

 Although plaintiff now asserts that religious uses were treated differently in that, under

the previous zoning scheme "certain nonreligious assemblies and institutions were not required

to go through the CUP process or obtain approval before locating in the RRFF-5 district," P.

Mot. Summ. J. 4, ECF 42, any claim based on that allegedly unequal treatment accrued and

expired some time ago, at the very least when plaintiff began incurring costs based on the

conditions imposed by the 2006 CUP. *See* Def. Reply 7, ECF 54; *Henderson v. Hubbard*, No.

1:08-cv-01632-OWW-WMW (PC), 2010 WL 599886, at *3 (E.D. Cal. Feb. 18, 2010) explaining

that RLUIPA claims are subject to a four-year statute of limitations) (citing *United States v.*

*Maui County,* 298 F. Supp. 2d 1010, 1012–13 (D. Haw. 2003)); *see also Petra Presbyterian*, 489

F.3d at 850 (ruling that RLUIPA challenge to previous version of zoning ordinance accrued

when plaintiff spent $300,000 to cover contingency in land purchase agreement that allowed

plaintiff to rescind if it could not secure land use approval to build a church).

 Nor does plaintiff cite any authority for the proposition that requiring a land owner who

proposes a religious use of a property to make certain improvements to infrastructure or public

rights-of-way as part of its proposed use imposes a substantial burden as a matter of course. *Cf.*

*Guru Nanak*, 456 F.3d at 991 (noting that zoning board "disregarded, without explanation" that

the plaintiff's "acceptance of various mitigation conditions would make the proposed temple

have a less-than-significant impact on surrounding land uses," in finding that plaintiff suffered a

substantial burden); *Redeemed Christian Church of God (Victory Temple) Bowie, Maryland v. Prince George's Cnty., Maryland*, 17 F.4th 497, 512 (4th Cir. 2021) (affirming bench trial verdict against the county for denying the church's zoning category change application without "consider[ing] alternatives—such as roadway improvements or additional road signs"); *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 352 (2d Cir. 2007) (finding that requiring the plaintiff to submit a modified proposal was a substantial burden because the zoning board "could have approved the [initial] application subject to conditions intended to mitigate adverse effects on public health, safety, and welfare" but "chose instead to deny the application in its entirety").

The purported burden here then includes the County's conclusion that the 2006 CUP has expired, and the County's resulting insistence that plaintiff must now apply to build phase 2 under the new "primary use" ZDO. *See* Pl. Resp. 18, ECF 50 ("The question presented is whether the County's more recent decision to deny the Church the ability to complete Phase 2, as previously approved, is a substantial burden."). Neither one of these carries the traditional hallmarks of a substantial burden under the RLUIPA. For instance, the County's decision that the 2006 CUP has expired is not arbitrary. *See Westchester Day Sch.*, 504 F.3d at 351 (finding that zoning board's denial of application for modified special use permit was arbitrary because it was "unsupported by the evidence and based on the zoning board's own error with respect to certain relevant facts"). Rather it is based on a straight-forward application of condition 29 of the 2006 CUP—simply, that the 2006 CUP would expire unless plaintiff sought an extension, or that plaintiff's proposed use would be "implemented" when "all necessary permits for the development have been secured and are maintained." Munns Decl., Ex. A at 41, ECF 44-3; *see also* Def. Resp. 11–12, ECF 47. It is undisputed that plaintiff did not file any application for an

extension and did not obtain, in the time allowed by the 2006 CUP, the necessary building permits for phase 2 that it now seeks.

Notably, the record in case is missing a common, even pervasive, attribute in those cases where the plaintiffs succeeded on a substantial burden claim, namely that the relevant zoning authority displayed some outward hostility toward or pretextual decision-making about the plaintiffs' proposed religious use. For example, in *Grace Church*, the church applied for a ten-year conditional use permit, but the city opposed anything longer than five years. *See* Pl. Resp. at 13, ECF 42 (citing *Grace Church of N. Cnty. v. City of San Diego*, 555 F. Supp. 2d 1126, 1128 (S.D. Cal. 2008)). The church's application for a seven-year CUP was approved by a hearings officer. *Id.* at 1128. On appeal, the city's planning commission reduced the CUP to five years without any explanation, and deleted a provision that allowed the church to apply for an extension when the five-year CUP expired. *Id.* at 1129. Several members of the planning commission unsuccessfully sought to insert a provision into the five-year CUP that would have prevented the church from seeking an extension and "admonished" the church not to return after five years. *Id*. Finally, the planning board that made recommendations to the city regarding land use applications for developments in this particular region of the city adopted guidelines "applicable only to churches" that made it impossible for the board to recommend approving any extension of the five-year CUP. *Id.* The district court granted the plaintiff's motion for summary judgment on its RLUIPA substantial burden claim, in no small part based on the "outright hostility to [the plaintiff's] application" at "various levels of [the] CUP process," and on the city's "arbitrary or pretextual" decision-making regarding the plaintiff's proposed use of the property. *Id.* at 1136–37, 1142.

Similar targeting or pretextual decision-making was also key to a recent case from this district that plaintiff submitted via email, with defendant's consent, as supplemental authority. The plaintiff-church in *St. Timothy's* began offering "free lunchtime meals to persons in need in 2009," and the service operated with the city's knowledge and without the city's interference for approximately 12 years. *St. Timothy's Episcopal Church by & through Diocese of Oregon v. City of Brookings*, No. 1:22-cv-00156-CL, 2024 WL 1303123, at *2–3 (D. Or. Mar. 27, 2024). Over time, the frequency at which these free meals were offered increased concurrently with a rise in homelessness, from once a week at first, to six times per week during the Covid-19 pandemic and its aftermath. *Id.* at *3. In 2021, the city issued the church a "permit to host individuals living in cars on its property" as "part of a City-sponsored program to help people who were homeless[.]" *Id.* Soon thereafter, neighbors began complaining to the city about purported "vagrants" and "transients" who allegedly engaged in "very suspicious behavior" and "multiple crimes" in the vicinity of the church. *Id.* The city council responded by reporting the church "to various public health agencies" for operating an unpermitted commercial kitchen and when the church applied for and received a state license to serve meals, the city notified the church it was illegally operating a commercial kitchen in a single-family residential zoning district. *Id.* at *3–4. Then, the city enacted an ordinance that allowed "benevolent meal services" as a conditional use, but limited the number of meals to no more than two days per week. *Id.* at *4. The court found that the city's post-hoc rationalizations regarding "public health and safety" rang hollow in light of its acquiescence to other secular commercial meal services in the residential zone (for example, at a bed-and-breakfast) and sudden "burst into action" against the church after years of disinterest. *Id.* at *9. Thus the city could not establish a compelling government interest for restricting plaintiff's religious use. *Id.* at *10.

24 – OPINION AND ORDER

There is nothing similar here. The County indisputably approved plaintiff's proposed use for the property through the 2006 CUP, in contrast to *Grace Church*, where the city repeatedly made clear its staunch opposition to the plaintiff's proposed religious use from the beginning and throughout the CUP process. Plaintiff did not challenge as discriminatory the imposition of the conditions themselves at the time the 2006 CUP was approved, or when plaintiff, for example, undertook the improvements to the public rights of way as the 2006 CUP required. There is no evidence that the County's zoning application process was tainted by some animus towards plaintiff's use, or that County officials were overtly attempting to shut down or limit a religious use, as in *St. Timothy's*. It was only after plaintiff failed to satisfy the conditions in the 2006 CUP that the County prevented further development, and there is no evidence that the County was targeting religious uses by relying on the unsatisfied conditions in the 2006 CUP to block plaintiff's efforts to build phase 2 but has not done the same for secular CUP holders. *See San Jose Christian Coll.*, 360 F.3d at 1035 (finding no substantial burden in part because there was "[no] evidence that the City would not impose the same requirements on any other entity"); *see also Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 740 (6th Cir. 2007) (finding no substantial burden in part because there was "no evidence that the Township [acted] because of some animus directed towards Living Water specifically or religious institutions generally").

Additionally, plaintiff has not shown why seeking an extension of the 2006 CUP or timely obtaining the relevant building permits for phase 2 were a substantial burden to its religious exercise. Plaintiff characterizes the problem as one created by the County by, for example, framing the issue as whether under the RLUIPA "a local government, absent a compelling governmental interest, [can] prevent a Church from completing its previously

approved religious exercise by forcing the Church to go through another review process and

incur further delay, uncertainty, and expense in its efforts to have a physical space adequate to

their needs and consistent with their theological requirements." Pl. Resp. 18, ECF 50 (citation

and quotation omitted). But again, the County initially approved plaintiff's proposed use of the

property, and plaintiff does not even argue, much less prove, that it never sought an extension of

the 2006 CUP because it believed that it would be a futile effort. At bottom, it was plaintiff's

failure to timely obtain the permits or seek any extensions of the 2006 CUP that led to the current

impasse. These were not "oppressive" requirements that prevented plaintiff from pursuing its

religious calling to construct a larger church. *See Foursquare Gospel*, 673 F.3d at 1067

(explaining that a substantial burden is one that is "oppressive to a significantly great extent"

such that "the governmental authority puts substantial pressure on an adherent to modify his

behavior and to violate his beliefs") (simplified).

  The same reasoning applies to the alleged burden that resulted from the County's

insistence now that plaintiff must now re-apply as a primary use. It is not a substantial burden to

file an application for a proposed land use. *San Jose Christian Coll.*, 360 F.3d at 1035 ("The

City's ordinance imposes no restriction whatsoever on College's religious exercise; it merely

requires College to submit a *complete* application, as is required of all applicants. Should College

comply with this request, it is not at all apparent that its re-zoning application will be denied.")

(emphasis in original); *see also Cathedral Church of The Intercessor v. Inc. Vill. of Malverne*,

353 F. Supp. 2d 375, 390 (E.D.N.Y. 2005) ("Here, the Plaintiffs not only had the opportunity to

re-submit their 1998 expansion Proposal, but they *did,* and were granted approval by the Village.

Such an approval is clearly not the complete denial that RLUIPA contemplates and thus may not

be deemed to be the substantial burden on religious exercise that the [p]laintiffs claim.") (internal

quotation marks omitted); *Fortress Bible Church v. Feiner*, 734 F. Supp. 2d 409, 503 (S.D.N.Y. 2010), *aff'd,* 694 F.3d 208 (2d Cir. 2012) (finding that requiring plaintiff to file an additional application was a substantial burden based on evidence of the local government's "intentional delay, hostility, and bias toward" and "arbitrary and unlawful denial of" the plaintiff's first application). It may be true, as plaintiff argues, that the Type II land use review process "can be very onerous for the applicant," but until the actual costs and other burdens are known, those burdens are hypothetical and may never come into play. *See Guatay Christian*, 670 F.3d at 980 ("Ultimately the County may grant the Church a Use Permit upon the Church's compliance with the state and county requirements, effectively mooting the claims upon which the Church now seeks relief from this court.").

Finally, the County's allowance of what plaintiff's counsel referred to as "partial" implementation of the 2006 CUP by permitting plaintiff to build and occupy its smaller phase 1 building while refusing to allow plaintiff to construct phase 2 and achieve full implementation is not a substantial burden. The County issued the permits and allowed plaintiff to build and occupy its smaller phase 1 building because that development was consistent with the conditions in the 2006 CUP—plaintiff timely pulled the necessary building and other permits to construct phase 1 while the 2006 CUP was active. *See* Parties' Joint Submission Regarding Permits 2–5, ECF 59. The RLUIPA does not empower property owners who seek to use their property for religious purposes to simply develop their property in their own vision without regard for the terms of a conditional use permit or other land use regulations that may apply to the parcel. *See Living Water*, 258 F. App'x at 739 ("The fact that [the plaintiff's] current facility is too small does not give the church free reign to construct on its lot a building of whatever size it chooses, regardless of limitations imposed by the zoning ordinances.").

The County is therefore entitled to summary judgment on plaintiff's substantial burden claim.

## V.    RLUIPA Equal Terms

The second provision of the RLUIPA prohibits a government from imposing a land use regulation that "treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). The parties vigorously dispute whether plaintiff's RLUIPA equal terms claim is ripe or was rendered moot by the County's recently adopted amendments to the ZDO allowing "places of worship" as a primary, rather than a conditional, use. Def. Mot. Summ. J. 5–7, ECF 43; Pl. Resp. 8–11, 13–15, ECF 50; Def. Reply 3–9, ECF 54. Because plaintiff's equal terms claim is a facial challenge to the County's previous zoning ordinance, it is "exempt from the final-decision requirement of the *Williamson County* ripeness analysis because a facial challenge by its nature does not involve a decision applying the statute or regulation." *Calvary Chapel Bible Fellowship v. Cnty. of Riverside*, No. 5:16-cv-00259-PSG-DTB, 2017 WL 6883866, at *6 (C.D. Cal. Aug. 18, 2017), *aff'd,* 948 F.3d 1172 (9th Cir. 2020) (citing *Hacienda Valley Mobile Estates v. City of Morgan Hill*, 353 F.3d 651, 655 (9th Cir. 2003)); *see also Divine Grace Yoga Ashram Inc. v. Cnty. of Yavapai*, No. 3:21-cv-08221-DJH, 2022 WL 279577, at *4 (D. Ariz. Jan. 31, 2022) ("Because the alleged injury under RLUIPA's equal terms provision may be present upon a facial reading of the Ordinance, it would not matter whether Plaintiff applied for the CUP.").

Plaintiff's claims for injunctive or declaratory relief are moot based on the amendment to the ZDO in 2023. *See* Pl. Resp. 11, ECF 50 ("While the amendment may have mooted the Church's request for an injunction barring the County from imposing ZDO terms that are no longer in affect, the Church's request for all other appropriate forms of relief—including

damages and an order declaring the Church's right to complete Phase 2 of its development—are ripe."). Its claim for damages, however, is not moot. *See Centro Familiar*, 651 F.3d at 1166–68 (holding claims brought under the RLUIPA for damages were not moot despite revision of ordinance and organization losing title to property, where the plaintiff had pleaded actual monetary damages as a result of the prior ordinance and denial of permit).

Claims for damages, though, must be timely brought. *See* Def. Reply 7 (asserting that any claim based on imposition of conditions in 2006 CUP is time-barred). As mentioned above, the statute of limitations for an RLUIPA claim is four years. *Henderson*, 2010 WL 599886 at *3. Plaintiff's injury from the allegedly unequal treatment of religious uses under the County's prior zoning scheme accrued, at the very least, when plaintiff began incurring expenses in complying with the conditions of the 2006 CUP. And, although the record is not entirely clear as to a precise date when that occurred, it was long before the four-year limitations period that applies here based on plaintiff's filing of this suit in 2022.

## VI.    Federal and State Constitutional Claims

For similar reasons, the County is entitled to summary judgment on plaintiff's free exercise claims under the First Amendment and Article I, Sections 2 and 3 of the Oregon Constitution. *See* Compl. ¶¶ 131–41, 151–60. Any free exercise claims based on the initial imposition of the conditions in the 2006 CUP are time-barred because that claim accrued nearly twenty years ago when plaintiff first applied for and was granted the 2006 CUP and began constructing phase 1 of its project under the conditions imposed by the 2006 CUP. The burdens imposed by the 2006 CUP that plaintiff timely obtain the necessary permits or seek an extension did not burden plaintiff's religious practice. *Spirit of Aloha Temple v. Cnty. of Maui*, No. 1:14-cv-00535-SOM-WRP, 2023 WL 5178248, at *14 (D. Haw. Aug. 11, 2023) ("A plaintiff

asserting a First Amendment free exercise of religion claim 'must show that the government action in question substantially burdens the person's practice of her religion.' ") (quoting *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015)). The current ZDO scheme is neutral towards religious use and plaintiff has not yet filed an application to build its phase 2 building under the new scheme. It is not a violation of plaintiff's free exercise rights to require it to file an application. *See Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1075 (9th Cir. 2015) ("The right to exercise one's religion freely, however, does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).") (simplified); *see also Emp. Div., Dep't of Hum. Res. v. Rogue Valley Youth for Christ*, 307 Or. 490, 497–98 (1989) (explaining that analysis of Oregon free exercise claims largely mirrors analysis of First Amendment free exercise claims).

## ORDER

Defendant's Motion for Summary Judgment [43] is granted and plaintiff's Motion for Summary Judgment [42] is denied.

DATED July 30, 2024.

_____
/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge